UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD E. MAINS and
SANDRA A. MAINS,

      Appellants,

                                          CASE NOS.   1:11-CV-456
                                                                        1:11-CV-740

v.

                                          HON. ROBERT J. JONKER

BARBARA P. FOLEY,
Chapter 13 Trustee,

      Appellee.
_____/

## OPINION

*Introduction*

      In these two related cases, Debtors appeal the Bankruptcy Court's decisions (1) denying confirmation of Debtors' Chapter 13 Plan based upon a determination that the Plan did not reflect good faith, and (2) sanctioning Debtors by prohibiting them from filing for bankruptcy protection for three years following the date of the order. (*see* docket ## 13-38, 13-45.) Central to the first appeal is whether a court may consider debtors' Social Security income in determining whether a plan shows good faith. The second issue on appeal tests the scope of the Bankruptcy Court's discretion.

**Factual and Procedural Background**

      Debtors Ronald and Sandra Mains voluntarily petitioned for bankruptcy under Chapter 7 of the Bankruptcy Code on August 28, 2009. (B.R. 250 – 304.) They had filed for bankruptcy twice

before that. (1:11-CV-740, docket # 5.) Their second bankruptcy proceeding had concluded in 2004. (*Id.*) After the Trustee moved for dismissal of their 2009 Chapter 7 filing, and after the Bankruptcy Court concluded that the Debtors' financial circumstances, when considered as a whole, reflected abuse under 11 U.S.C. § 707(b)(3), the Debtors successfully moved to convert the Chapter 7 case to a Chapter 13 case. (B.R. 333, 337 – 338; 542.)

In the course of the Chapter 13 proceeding, the Bankruptcy Court found that the Debtors, a retired married couple, have a monthly after-tax income of approximately $6,321.91.[1] (*Id.* at 543.) Of this amount, $2,905.00 is attributable to Social Security benefits, and $ 2,845.45 is attributable to pensions. (*Id.*) Debtors' monthly expenses total $4,982.61, including $2,039.99 budgeted for housing alone. (*Id.*) Subtracting Debtors monthly expenses from Debtors' monthly income yields a surplus of $1,339.30 per month. This surplus is enough to enable Debtors to pay all their creditors in full in 30 months. (*Id.*) In their Chapter 13 plan, however, Debtors proposed paying creditors $324.00 per month over a 36 month period, leaving unsecured creditors with a likely dividend of less than 5%. (*Id.*)

The Bankruptcy Court concluded on this record that Debtors were not proposing their Chapter 13 Plan in good faith. The Court noted that nothing in the record showed that Debtors "confronted any special circumstances that would warrant holding back over 75% of their monthly net income instead of paying it into their plan as well." (*Id.* at 517.) The Bankruptcy Court further noted that "for the most part, the [Debtors'] unsecured nonpriority bills are simply credit card accounts about which the [Debtors] have offered no further information," and therefore found it "fair

---

[1] The Bankruptcy Court based its findings regarding the Debtors' monthly income and expenses on the Debtors' schedules filed November 10, 2010. (B.R., 543.)

2

to infer that [Debtors'] current financial difficulties reflect nothing more than the two of them living beyond their means at the expense of their creditors." (*Id.*) The Bankruptcy Court also observed that there appeared to be "room in [Debtors'] Schedule J budget for what the Sixth Circuit once described as old-fashioned belt-tightening." (*Id.*) By way of example, the Bankruptcy Court commented that "the Mains have budgeted over $2,000 a month for housing in order to stay in a home that they admit has no equity . . . [and] have also budgeted $250 a month for clothing and laundry expenses." (*Id.*) In the Bankruptcy Court's view, "[b]oth of these budgeted items appear excessive for a retired couple with no dependents." (*Id.*) Debtors offered no "explanation as to why they could not move to a much more affordable place to live such as an apartment, or why they could not get by for the next three years with the clothes they currently have, and by doing their laundry themselves." (*Id.*) The Bankruptcy Court added, "But, again, this is only an aside because the Mains readily admit that they could afford to pay their creditors 100 percent in a three-year plan even with a budget that allows them to remain in their home, and to continue clothing themselves as they would like." (*Id.*)

The Bankruptcy Court determined that under these circumstances, the Debtors' Chapter 13 plan was not proposed in good faith, and the Bankruptcy Court gave Debtors an opportunity to amend the plan. (*Id.* at 543, 527.) Debtors chose not to amend the plan. They contended that the plan reflected good faith, arguing primarily that their Social Security benefits should be excluded from the good faith analysis under section 1325(a)(3). (*Id.* at 544, 556.) The Bankruptcy Court disagreed, explaining that while [t]here is no question that Social Security benefits are to be excluded from the objective section 1325(b) analysis," the Social Security benefits were relevant to the subjective section 1325(a)(3) good faith analysis. (*Id.* at 556.) The Bankruptcy Court rejected Debtors' Chapter 13 plan, denied Debtors' motion to continue the automatic stay during the

3

pendency of their appeal, and dismissed Debtors' case. (*Id.* at 545, 558, 560.)

In its Order of Dismissal, the Bankruptcy Court invoked 11 U.S.C. § 105(a) and the Court's inherent authority to control its docket to prohibit Debtors from filing another bankruptcy petition under any chapter of the Code for three years after the date of the Order of Dismissal. (*Id.* at 563.) The Order of Dismissal does provide that Debtors may at any time within that three-year period move for a modification of the order for good cause, including, for example, "a satisfactory showing that Debtors intended to propose in a Chapter 13 proceeding a plan that would pay their unsecured nonpriority creditors a sufficient dividend to meet the good faith requirement," or "a satisfactory showing that their circumstances have so changed that Chapter 7 relief would no longer be deemed abusive under 11 U.S.C. § 707(b)." (*Id.*)

Debtors now appeal the Bankruptcy Court's decision to reject their proposed Chapter 13 plan for lack of good faith, and the Bankruptcy Court's imposition upon them of a three-year bar from bankruptcy filing. The Court earlier denied Debtors' motion to reinstate the automatic stay (docket # 27).

## Standards of Review

On appeal, the Court applies a clearly erroneous standard of review to the Bankruptcy Court's findings of fact. *In re Cusano*, 431 B.R. 726, 730 (B.A.P. 6th Cir. 2010). The Court reviews the Bankruptcy Court's legal conclusions *de novo*. *Id.* An abuse of discretion standard applies to a Bankruptcy Court's decision to bar a debtor from filing for a period of years after dismissal. *Id.*

1.       **Good Faith**

*Legal Framework*

A Bankruptcy Court has no obligation to confirm a Chapter 13 plan proposed in bad faith. In the language of the Code:

> (a)   Except as provided in subsection (b), the court shall confirm a plan if [among other things] . . .
> (3) the plan has been proposed in good faith and not by any means forbidden by law;
> . . . .

11 U.S.C. § 1325(a). The question, of course, is what amounts to good faith. "Good faith is a fact-specific, flexible determination." *Cusano*, 431 B.R. at 735 (citing *In re Okoreeh-Baah*, 836 F.2d 1030, 1032-33 (6th Cir. 1988)). The Sixth Circuit "has instructed that in determining a debtor's good faith, bankruptcy courts should consider the totality of the circumstances." *Id.* "'Because good faith is an amorphous notion, it is impossible to identify the infinite variety of factors that might weigh in the good faith equation.'" *Id.* (quoting *In re Condon*, 358 B.R. 317, 326 (B.A.P. 6th Cir. 2007) (internal quotation marks omitted)). Factors a court may consider in the context of a Chapter 13 dismissal for lack of good faith include, but are not limited to, "the timing of the petition, how the debt arose, the debtor's motive in filing the petition, how the debtor's actions affected creditors, and the debtor's treatment of creditors both before and after the petition was filed." *Id.* Another factor is the amount of the proposed payments and the debtor's surplus. *In re Caldwell*, 895 F.2d 1123, 1126 (6th Cir. 1990). "A key inquiry . . . is whether the debtor is seeking to abuse the bankruptcy process." *Cusano*, 431 B.R. at 735. "The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the

5

debtor's available resources." *Okoreeh-Baah*, 836 F.2d at 1033. This is a subjective decision "left simply to the bankruptcy court's common sense and judgment." *Id.*

The subjective good faith test of section 1325(a) is distinct from and independent of the objective requirement of section 1325(b) that a confirmable plan include all of the Debtors' "projected disposable income" for the relevant period:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan . . .
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325. Under the 2005 BAPCPA amendments, "disposable income" starts with "current monthly income," which the Code expressly defines to "exclude[] benefits received under the Social Security Act." 11 U.S.C. § 101(10A). Under no circumstances may a court include Social Security income in the "projected disposable income" calculation of section 1325(b). *In re Baud*, 634 F.3d 327, 349 (6th Cir. 2011).

The question is whether a court may consider Social Security benefits in evaluating subjective good faith under section 1325(a) even though it may not do so in applying the objective "disposable income" test of section 1325(b). Answering the question requires not only a parsing of the Bankruptcy Code provisions, but also evaluation of a provision of the Social Security Act affecting assignment of benefits:

> (a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

> (b) No other provision of law . . . may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407. Debtors say this provision of the Social Security Act prevents a Bankruptcy Court from considering Social Security benefits in evaluating subjective good faith.

*Analysis*

Whether a court may consider Social Security income in a good faith analysis under 11 U.S.C. § 1325(a)(3) is a question of law; *de novo* review applies. The Sixth Circuit recently noted that "[c]ourts are split on the issue of whether a bankruptcy court may consider an above-median-income debtor's decision not to commit available Social Security benefits to unsecured creditors in the good faith analysis under [section 1325]." *In re Baud*, 634 F.3d at 346 n.13. The court left the question unresolved, because the debtors in *Baud* chose to devote Social Security benefits to unsecured creditors. *Id.*

The starting point in the analysis is the language of the Bankruptcy Code itself. Nothing in the language of section 1325(a) purports to limit in any way the factors a Bankruptcy Court may consider in evaluating good faith. Case law confirms the open-ended scope of the good faith test as an ultimately subjective determination based on all facts and circumstances. *Cusano*, 431 B.R. at 735; *Condon*, 358 B.R. at 326; *Okoreeh-Baah*, 836 F.2d at 1033. Congress actually reinforced the point in the 2005 BAPCPA amendments by expressly excluding Social Security benefits from the objective "disposable income" analysis of section 1325(b), but leaving undisturbed the open-ended and unqualified subjective determination of good faith under section 1325(a). As this case demonstrates, it is entirely possible for a debtor to satisfy the objective test of section 1325(b) while at the same time leaving ample factual basis upon which to find a subjective lack of good faith.

These considerations have led the Southern District of Ohio to conclude that Social Security income is a proper factor in the good faith analysis. *In re Upton*, 363 B.R. 528 (Bankr. S.D. Ohio 2007). The court noted that "[t]he amendments wrought by BAPCPA did not change the requirement that a chapter 13 plan be proposed in good faith." *Upton*, 363 B.R. at 535. The court emphasized that the Sixth Circuit and "many other courts" have long considered the amount of the proposed payments and amount of debtor's surplus a proper factor for a court to consider in the good faith analysis. *Id.* at 536. "Congress, armed with the knowledge of that interpretation, did not amend the requirement of good faith contained in § 1325, or the elements to be considered in that analysis," and therefore "is presumed to be satisfied with the effect of the statute as applied by the courts." *Id.* The court also observed that "neither the projected disposable income test, nor [the] good faith requirement, either independently or in combination, permit debtors to accumulate savings while paying unsecured creditors less than 100%." *Id.* This comports with the idea that the good faith requirement and projected disposable income tests are separate inquiries intended to prevent debtors with the ability to pay their debts from avoiding their obligations.

Debtors object that this analysis effectively rewrites 42 U.S.C. § 407 out of the Social Security Act. In particular, Debtors argue that considering Social Security benefits in the good faith analysis effectively subjects them "to the operation of any bankruptcy or insolvency law," contrary to the Act. This Court disagrees. The entire focus of section 407 is on a third party's compelled acquisition through legal process of someone else's Social Security benefits. That is not what the good faith test of the Bankruptcy Code section 1325(a) is doing. The good faith test simply requires a debtor to demonstrate good faith in its Chapter 13 plan proposal if the Debtor wishes to receive the benefits of Chapter 13. It is a transactional test no different in principle than a Social Security

beneficiary's decision to use his or her benefits to purchase anything of value that the beneficiary desires. No one would suggest that such a beneficiary has immunity from paying the restaurant bill he or she incurred just because the cash to pay came from Social Security benefits. By the same token, nothing in section 407 of the Social Security Act gives a debtor immunity from demonstrating good faith as a pre-condition to confirmation of a Chapter 13 plan, even if in a particular case – like this one – demonstrating good faith requires including some or all of the Social Security benefits in the plan.

Debtors' case law to the contrary is neither persuasive nor controlling. In *In re Thompson*, 439 B.R. 140, 143 (8th Cir. 2010), the Eight Circuit did not permit consideration of Social Security benefits in the good faith analysis, but the court's reasoning does not apply to the facts in this case, and may rest on a misunderstanding of the interplay between the good faith test of section 1325(a), and the objective "disposable income" test of section 1325(b). The court said "[c]onsidering the Debtors' exclusion of their Social Security income from their plan payments as part of the good faith analysis would improperly render section 1325(b)'s ability to pay test meaningless. *Id.* (citing *In re Barfknecht*, 378 B.R. 154, 164 (Bankr. W.D.Tex. 2007)). Treating the *Thompson* holding as a general rule would prevent section 1325(a) from functioning as a check on debtors who could satisfy the means test despite a subjective finding of bad faith, and would effectively read language Congress chose to include only in section 1325(b) back into section 1325(a). Perhaps that was appropriate on the facts of the case, but as a general proposition it is not correct. Indeed, the court went on to state that because "the ability to pay test already addresses whether the Social Security income needs to be included in a debtor's plan payments[,] [c]onsidering the same issue under the good faith test would be duplicative." *Id.* Again, perhaps so in that particular case, but definitely

9

not as a general proposition because Congress chose two separate tests, deliberately leaving one open-ended.

*Thompson's* citation to *Barfknecht* further suggests that the reasoning of *Thompson* should not be generalized to all cases. The *Thompson* court stated that "even if the Debtors' retention of Social Security income could contribute to a finding of bad faith, standing alone it could not prevent the Debtors from establishing good faith under section 1325(a)(3)." *Id.* *Barfknecht* reached the same conclusion in rejecting a trustee's argument that a debtor who refused to pay 100% to unsecured creditors' claims while retaining Social Security income was necessarily acting in bad faith, *Barfknecht*, 378 B.R. at 164, noting any such *per se* rule would conflict with the totality of the circumstances test for good faith. That the trustees in *Thompson* and *Barfknecht* apparently argued for a *per se* rule requiring a finding of bad faith distinguishes those cases from the case before this Court, in which no one is advocating a *per se* rule. Indeed, no one reasonably could advocate a *per se* rule on the issue, given the open-ended statutory language and judicial gloss on the good faith standard. The intrinsic flexibility of the standard is its strength, both in general, and in the particular assessment of whether, when and how Social Security benefits must fit into the good faith determination. A *per se* rule in either direction defeats the purposes of the good faith test.

There is nothing in the two Sixth Circuit precedents cited by Debtors that compels a contrary result. As already noted, *Baud* explicitly left the question open for later decision. *In re Buren*, 725 F.2d 1080 (6th Cir. 1984), decided a question not presented here. In *Buren*, the Sixth Circuit simply held that section 407 of the Social Security Act prevents a bankruptcy court from imposing income deduction orders on the Social Security Administration. *Id.* at 1087. Nothing in *Buren* reaches the

issue presented here of whether section 407 prohibits a bankruptcy judge from considering Social Security benefits as one of many factors in a subjective good faith assessment.

Accordingly, the Court holds on the legal issue presented that a bankruptcy judge may consider Social Security income in the good faith analysis. The good faith determination itself is ultimately a question of fact in any particular case, reviewed for clear error. Debtors have pointed to no factual errors that call into question the factual basis of the Bankruptcy Court's decision.

For these reasons, the Court affirms the Bankruptcy Court's decision to reject Debtors proposed Chapter 13 plan for lack of good faith.

**2.        Sanctions Limiting Future Filings**

*Legal Standards*

11 U.S.C. § 105(a) provides that

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process.

11 U.S.C. § 349(a) provides that

> [u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title [with one exception not applicable here].

**Discussion**

Under 11 U.S.C. § 105(a), the Bankruptcy Court has very broad discretion to fashion appropriate sanctions. "Where there is sufficient cause, bankruptcy courts have the authority pursuant to 11 U.S.C. §§ 105 and 349(a) to prohibit bankruptcy filings in excess of 180 days." *In*

*re Cusano*, 431 B.R. 726, 737 (BAP 6th 2010). "When a court metes out a sanction, it must exercise [its] power with restraint and discretion." *In re Downs*, 103 F.3d 472, 478 (6th Cir. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). "The sanction levied must thus be commensurate with the egregiousness of the conduct." *Id.* An abuse of discretion occurs when a court "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *United States v. Hart*, 70 F.3d 854, 859 (6th Cir. 1995). Though the question is close, the Court believes the three year bar on refiling the Bankruptcy Court imposed on Debtors reflects an abuse of discretion on this record.

Debtors argue, and indeed the Trustee conceded at oral argument, that a three year bar is longer than that typically imposed as a sanction, including for conduct arguably more egregious than that of Debtors in this case. This is consistent with the Court's own research. *See, e.g., Cusano*, 431 B.R. at 735-36 (finding two year bar on re-filing not an abuse of discretion where debtor prosecuted bankruptcy cases only when it suited his purpose of frustrating efforts to collect on a judgment lien); *In re Leonard*, 2009 WL 1475138 (Bankr. E.D. Tenn. May 22, 2009) (imposing one-year bar on refiling where debtor had filed seventeen bankruptcy cases over the course of fourteen years and disregarded bankruptcy court's order requiring that any future case filed be accompanied by full payment of the filing fee); *In re Price*, 304 B.R. 769 (Bankr. N.D. Ohio 2004) (imposing 360-day bar on refiling where debtor and her non-debtor spouse filed six separate bankruptcy petitions over the course of six years, manipulating the bankruptcy system to prevent the sale of their home); *In re Nosker*, 267 B.R. 555 (Bankr. S.D. Ohio March 1, 2001) (imposing 180-day ban on refiling where debtor willfully failed to comply with court order to begin making plan payments).

The Court understands the Bankruptcy Court's desire in this case to protect itself from a series of incremental filings designed to achieve the practical equivalent of what the Bankruptcy Court concluded Debtors were not entitled to receive under Chapter 7. But the sanction is unnecessarily severe. It not only closes the Courthouse doors to Debtors, it does so for three full years, simply because Debtors chose to test – and ultimately lost – a legitimate legal position. There was no false statement by Debtors. There was no concealment of any kind by Debtors. There were simply legal positions Debtors wished to test in what they thought would be the best possible procedural position. Needless to say, litigants have a First Amendment right to test their legal theories. And that interest is at its highest when the legal issue in question is open in the Circuit and has divided other courts. As it happens, the Bankruptcy Judge and I have both rejected the Debtors' legal theory, but that surely does not mean Debtors were wrong to try. They may yet prevail on appeal.

The Bankruptcy Court left open to Debtors the option of petitioning to re-open the case for good cause, which would enable Debtors to seek bankruptcy protection should their circumstances change materially. This safety net does mitigate concern that the Debtors might lack necessary access to appropriate bankruptcy protection during the period the bar is in place. And yet, even this opening does not erase the potentially chilling effect on litigants and their counsel who may be considering novel legal theories. Our common law process depends on robust engagement of the issues, and an extreme sanction of closing the Courthouse doors for three years ought to be reserved for only the most extreme sorts of misconduct that distort the litigation process through lying, cheating or other abuses, rather than for advancing legal theories that have support in law but are simply rejected on the merits.

Accordingly, the Court vacates the sanction the Bankruptcy Court imposed.

## Conclusion

For these reasons, the Court **AFFIRMS** the Bankruptcy Court's decision denying confirmation of Debtors' Chapter 13 Plan and **VACATES** the Bankruptcy Court's decision sanctioning Debtors.


Dated:     February 24, 2012              /s/ Robert J. Jonker
                                                     ROBERT J. JONKER
                                                     UNITED STATES DISTRICT JUDGE